**SO ORDERED.**

**SIGNED this 20th day of February, 2007.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court

**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| DEBRA BOYER SCHMIDT | 06-51890-C |
| *DEBTOR* | CHAPTER 7 |
| JOHN PATRICK LOWE, TRUSTEE | |
| *PLAINTIFF* | |
| V. | ADV. NO. 06-5287-C |
| LYNETTE SANFLIPPO & RONALD A. BOYER, JR. | |
| *DEFENDANTS* | |

**DECISION ON MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT**

CAME ON for consideration the foregoing matter. The trustee filed a motion for summary judgment in on January 16, 2007. The defendants filed a response and cross motion for summary judgment on February 2, 2007. This order disposes of both motions.

**Summary Judgment Facts**

The parties do not dispute the essential facts. The debtor's mother died on June 27, 2006.

On August 3, 2006, the debtor, acting as independent executrix for her mother's probate estate, filed an application for probate of will and for issuance of letters testamentary. She attached a copy of the will to the application. The will, executed May 1, 1998, indicated that Debra Boyer was a named beneficiary. On August 24, 2006, the presiding probate court judge entered her order granting the foregoing application and authorizing letters testamentary. On September 21, 2006, Debra Schmidt filed an inventory and appraisement of the estate.

On September 29, 2006, Debra Schmidt filed her bankruptcy petition under chapter 7. On November 3, 2006, Debra Schmidt filed with the probate court a "memorandum of disclaimer." The trustee, by this adversary proceeding, now seeks to set aside the purported disclaimer, because it was executed post-petition.

**Arguments of the Parties**

The trustee argues that a debtor cannot use state law "relation back" principles to *ex post* render property no longer property of the estate. There is no question but that, as of the date of the filing, the debtor had a testamentary interest in her mother's probate estate, constituting both an equitable interest in property as of the date of filing. Executing a disclaimer post-petition amounts to a transfer (or attempted transfer) of property of the estate, says the trustee, and that transfer can be avoided by virtue of section 549. The trustee also points out that the debtor failed to list in her bankruptcy schedules the existence of her interest in this probate estate, the fact of her mother's death pre-petition, or any stated intention to disclaim any interest in the probate estate either prior to the filing of the petition or in her bankruptcy schedules.[1]

---

[1] Schedule B, Question 20 requires a debtor to list all "contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust." The debtor checked the box "None." Question Two in the Statement of Affairs asks for the debtor to list income other than from employment or operation of a business. The debtor identifies a monthly payment of $1,400 "for care of mother's estate" but does not further elaborate. The debtor does not list the probate

-2-

The debtor counters that, under applicable Fifth Circuit law, as well as the law in Texas, the disclaimer executed by the debtor, even though it was signed after the bankruptcy petition was filed, relates back to the debt of the death of the decedent, which was June 27, 2006, well prior to the filing of the case. The debtor explains that Section 37 of the Texas Probate Code authorizes disclaimers, permits them to relate back as a matter of law, and states that they are effective against creditors. She adds that the Fifth Circuit adheres to the rule set out in a Seventh Circuit decision which upheld a pre-petition disclaimer against attack by a trustee, who sought to set it aside as a fraudulent transfer under section 548. The debtor concludes that the fact that this disclaimer was executed post-petition is irrelevant, because it will still relate back to a pre-petition event, such that, as a matter of law, as of the filing of her bankruptcy petition, the debtor did not have an equitable interest in her mother's probate estate. The rule that insulates disclaimers executed pre-petition from avoidance under section 548 should similarly insulate disclaimers executed post-petition from avoidance under section 549, says the debtor.

**Analysis**

Section 549 of the Bankruptcy Code, in relevant part, provides that "the trustee may avoid a transfer of property of the estate – (1) that occurs after the commencement of the case; and (2) ... (B) that is not authorized under this title or by the court." 11 U.S.C. § 549(a). The term "transfer" in section 549 is not specially defined in that section, so the generic definition of transfer in section 101 is controlling. That definitional section states that the term 'transfer,' as used in the Bankruptcy Code, means, in relevant part, "each mode, direct or indirect, absolute or conditional, voluntary or

---

proceeding in response to question 4, which requires a listing of suites and administrative proceedings "to which the debtor is or was a party within one year immediately prior to filing the bankruptcy case." The probate litigation is not listed. The debtor answers "none" to Question 14, which asks the debtor to list "property held for another person."

involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54). Both the House and Senate Reports state that this definition "is as broad as possible [and] many of the potentially limiting words in current law are deleted, and the language is simplified ... Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody and control are interests in property." H.R. REP. NO. 595, 95th Cong, 1st Sess 314 (1977); S. REP. NO. 989, 95th Cong, 2nd Sess 27 (1978).

In Texas, as a general matter, title to property of a decedent passes as of date of the date of death to the beneficiaries, subject to the claims of creditors of the decedent. TEX. PROB. CODE, § 37 (West 2003); *Dyer v. Eckols*, 808 S.W.2d 531, 532 (Tex. App. – Houston [14th Dist] 1991); *Welder v. Hitchcock*, 617 S.W.2d 294, 297 (Tex.Civ.App. – Corpus Christi 1981, writ ref'd n.r.e.). Thus, as a matter of state law, on the date of the bankruptcy petition in this case, the property of the bankruptcy estate included the debtor's testamentary interest as an heir and named beneficiary under the will of her deceased mother. *Id.*

Outside bankruptcy, a beneficiary can disclaim his or her interest in a probate estate. If done properly, the disclaimer relates back to the date of death of the decedent. *See* TEX. PROB. CODE, § 37A. Here's what that statute says:

> A disclaimer ... shall be effective as of the death of decedent and relates back for all purposes to the death of the decedent and is not subject to the claims of any creditor of the disclaimant. Unless the decedent's will provides otherwise, the property subject to the disclaimer shall pass as if the person disclaiming ... had predeceased the decedent.

TEX. PROB. CODE, § 37A (West 2003). Texas courts give legal effect to this relation-back doctrine, ruling that, as a result of its operation, the beneficiary never gains possession of the disclaimed

property. A judgment creditor's judgment will thus never attach to an interest so disclaimed, on the theory that, as a result of the relation back doctrine, the debtor is deemed to have predeceased the decedent. *See Dyer v. Eckols*, 808 S.W.2d, at 535 (upholding effect of disclaimer against an intervening judgment creditor); *see also Welder v. Hitchcock*, 617 S.W.2d, at 297.

The Fifth Circuit has ruled that disclaimers executed prior to the filing of a bankruptcy petition are effectively insulated from avoidance as fraudulent transfers under section 548. *Simpson v. Penner*, 36 F.3d 450, 452 (5th Cir. 1994); *see also In re Atchison*, 925 F.2d 209 (7th Cir.), *cert. denied sub nom. Jones v. Atchison*, 112 S.Ct. 178 (1991). *Simpson* expressly disapproved of this court's ruling in *In re Brajkovic*, 151 B.R. 402 (Bankr. W.D.Tex. 1993), and that decision can no longer be cited as good law, insofar as it is applied to the application of section 548 to pre-petition disclaimers.

None of the foregoing authorities speak to the situation presented by the facts of this case – a disclaimer executed *post-petition*. A closer examination of the logic in *Simpson* sheds light on why the outcome might be different post-petition. In *Simpson*, the Fifth Circuit said that a pre-petition disclaimer did not constitute a fraudulent under section 548 because the debtor never had an interest to "transfer," thanks to the operation of the disclaimer, such that no fraudulent transfer could be said to have occurred (one cannot transfer what one does not have). The Fifth Circuit expressly adopted the logic and holding of the Seventh Circuit's decision in *Atchison*. *Simpson*, 36 F.3d, at 452-53. The court rejected the logic of *Brajkovic*, which had argued that, immediately prior to the execution of the disclaimer, the debtor *did* have an interest in property. *Brajkovic* had concluded that the disclaimer *itself* functioned to eliminate an interest otherwise conferred under the laws of devise and descent, and so should be vulnerable as a fraudulent transfer. Responded Fifth

Circuit,

> We decline to follow the reasoning in *Brajkovic*. The *Brajkovic* court, unlike the *Atchison* court, does not give state law its full effect. Under Texas law, the beneficiary never possesses the disclaimed property. *Dyer v. Eckols*, 808 S.W.2d 531, 534 (Tex.Ct.App.1991). Thus, the *Brajkovic* court erred in concluding that under Texas law, the property of the decedent shifts to the first beneficiary and then to the next beneficiaries.

*Simpson*, 36 F.3d, at 453. Both circuit court decisions, then, expressly declined to consider whether a disclaimer might count as a "transfer" within the meaning of federal law, instead choosing to construe the disclaimer statutes as a species of property law, defining what interest, if any, the debtor has in property (here, property granted via the laws of devise and descent).

Both *Simpson* and *Atchison* cited to the holding and logic of a Tenth Circuit decision that dealt with the same issue under section 67(d)(2) of the Bankruptcy Act. *See Hoecker v. United Bank of Boulder*, 476 F.2d 838 (10th Cir. 1973). One judge dissented in that decision, noting that, in his view, because the term "transfer" is defined exclusively by federal law, the majority holding impermissibly permits state disclaimer laws to revise the meaning of the term transfer. Said the dissent,

> While the majority opinion recognizes that federal law is controlling as to the meaning of "transfer," it nevertheless concludes because of intent of the Colorado legislature that a disclaimer filed within the six months' period would not operate as a transfer ... and because of the relation back provision, that there was no transfer alleged in violation of § 67(d)(2). While the case is not free from doubt, I cannot agree.
>
> The Colorado [disclaimer] statute recognizes that there is a limited power in the disclaimant to control the passing of his interest in the property during the six months' period after the will is admitted to probate, as well as later. And if the right of disclaiming is then exercised ". . . such property or beneficial interest so disclaimed shall pass . . ." as if he had predeceased the decedent, unless the will provides otherwise. ... Thus under state law there is a power which

>   seems to me to be a "mode, direct or indirect," of disposing or parting with his interest in the property and hence a transfer.

*Hoecker*, 476 F.2d, at 842 (Holloway, J., dissenting) (internal citations omitted).

The observation of the dissenting judge in *Hoecker* is compelling, and made the more so by the Supreme Court's decision in *Drye v. United States*, 120 S.Ct. 474, 478-82 (1999). In *Drye*, the Supreme Court ruled that a state-authorized disclaimer of an inheritance could not defeat the attachment of a federal tax lien to the taxpayer's beneficial interest prior to the execution of the disclaimer. Said the Court,

>   Just as "exempt status under state law does not bind the federal collector," *Mitchell*, 403 U.S., at 204, 91 S.Ct. 1763, so federal tax law "is not struck blind by a disclaimer," *United States v. Irvine*, 511 U.S. 224, 240, 114 S.Ct. 1473, 128 L.Ed.2d 168 (1994). Thus, in *Mitchell*, the Court held that, although a wife's renunciation of a marital interest was treated as retroactive under state law, that state-law disclaimer did not determine the wife's liability for federal tax on her share of the community income realized before the renunciation. *See* 403 U.S., at 204, 91 S.Ct. 1763 (right to renounce does not indicate that taxpayer never had a right to property).

*Drye*, 120 S.Ct., at 482.

The Fifth Circuit's decision in *Simpson* was rendered in 1994. *Drye* was issued in 1999. The Fifth Circuit has not had occasion to revisit *Simpson* since *Drye*, and if it does so, there is a strong argument that the court would rule *Simpson* to be no longer good law. Until the Fifth Circuit does so, however, its decision in *Simpson* is still binding on this court and settles the question whether a pre-petition disclaimer can be set aside as a fraudulent transfer under section 548.[2] But Judge

---

[2] *See Matter of Orso*, 214 F.3d 637, 640 n. 5 (5th Cir. 2000), *rev'd en banc on other grounds*, 283 F.3d 686 (5th Cir. 2002) ("[T]his court relies on strict stare decisis rather than civilian analysis and cannot simply ignore the legal interpretation of § 22:647 provided in *Young*. Even though the bankruptcy court believes this court needs to re-think *Young*, the bankruptcy court is not empowered to re-think and overturn Fifth Circuit precedent on its own). The Fifth Circuit *en banc* later expressly overruled *Young*, the decision first challenged by the bankruptcy court.

Holloway's observations in dissent in *Hoecker* (and of course Justice Ginsburg's analogous remarks in *Drye*) take on renewed force in this circuit when they are applied in the context of a disclaimer executed *post-petition*. This is so because of the Fifth Circuit's relatively recent *en banc* decision in *Matter of Burgess*, 438 F.3d 493 (5th Cir. 2007) (*en banc*).

In *Burgess*, the court said

> the scope of § 541 is broad: that section brings into the estate all of the debtor's legal and equitable interests "wherever located and by whomever held." § 541(a)(1). However, the Code also provides a temporal limitation: property of the estate is determined at "[t]he commencement of the case." *Id*. The case is commenced, and the estate created, when the bankruptcy petition is filed. *See In re Swift*, 129 F.3d 792, 795 (5th Cir.1997); 5 Collier on Bankruptcy 541.02 (15th ed. rev.2005).

*Burgess*, 438 F.3d, at 496. The debtor in *Burgess* was awarded crop damages for a crop loss he suffered pre-petition. Tellingly, the crop damage award only came to pass because Congress passed a law authorizing crop disaster relief – and that law was enacted after the debtor's bankruptcy filing (indeed, after the debtor's discharge). As of the commencement of the case, concluded the Fifth Circuit, the debtor did not have an interest in the crop disaster relief payment, because, as of that point in time, Congress had not enacted a law authorizing crop disaster relief. The majority rejected the dissent's argument that there was at least a "contingent" interest in property as of the filing (on the theory that legislation was all but inevitable). *Id.*, at 500-01 (a mere hope or expectancy does not create a contingency). It also rejected the notion that the crop disaster payment was "sufficiently rooted in the debtor's pre-bankruptcy past" (*i.e.*, the payment was attributable to a disaster that occurred prior to filing) such that it ought to be considered property of the estate. *Id.*, at 499.

The court in *Burgess* held that subsequent events (in that case, Congress' passage of a crop disaster relief bill) could not be used to revise the state of affairs as they existed as of the date of the

-8-

bankruptcy filing. The debtor here, in contrast, makes precisely that argument, maintaining that certain post-petition events must be held to have altered what was property of the estate as of the filing of the bankruptcy case. This the debtor cannot do. Property interests may turn on state law, but what constitutes property of the estate is a question of federal law. *See Burgess* 438 F.3d, at 496. The federal statute defines the bankruptcy estate's interest in property temporally. *Id.*

As of the filing of the petition, the debtor had not executed a disclaimer. The debtor filed her schedules and statement of affairs with the petition, and those schedules require the debtor to accurately report all legal and equitable interests in property owned by the debtor as of the filing of the case. The debtor, by rights, should have listed her interest in her mother's estate as an interest in property because, as of the date of filing, that interest belonged to the debtor as a matter of law. *See* discussion *supra*; *see also* 11 U.S.C. §§ 541(a)(1), 521(a)(1); *see also* Official Form 6 Schedules. Even if she *intended* to later execute a disclaimer, that intention would not alter the status of her interest in property as of filing, nor would it relieve her of her duty to accurately complete her bankruptcy schedules. Granted, had she executed a disclaimer prior to filing, the disclaimer would have been effective *as of the date of the commencement of the case* to eliminate any interest she might otherwise have had as a beneficiary under her mother's will, because she would not have had a cognizable interest in property either legally or equitably as of the date of filing, thanks to the operation of section 37A of the Texas Probate Code. She did not do so, however. As a matter of federal law, then, the bankruptcy estate included *all* legal and equitable interests of the debtor in property as of the date of her filing – and on that date, those interests included her testamentary interest in her mother's probate estate.

The debtor argues that the *Simpson* rule, which insulates pre-petition disclaimers from

avoidance as fraudulent transfers should operate in the same fashion to disclaimers executed *post-petition*. The argument fails, however, because it presumes that state law can alter the temporal aspect of section 541(a)(1). After *Burgess*, we now know that that is not, and cannot be, the law.[3]

The Supreme Court's decision in *Drye* also supports this conclusion. Though that decision involved the intersection of state disclaimer law and federal tax lien law, the logic employed by the court applies with equal force in the bankruptcy context. *See Drye v. United States*, 120 S.Ct., at 482. Just as federal tax law is not "struck blind" by a disclaimer, *id.* at 478, neither is federal bankruptcy law. Noted the Court, in rejecting the taxpayer's argument there that he was simply "rejecting a gift" he had not solicited,

> A donee who declines an inter vivos gift generally restores the status quo ante, leaving the donor to do with the gift what she will. The disclaiming heir or devisee, in contrast, does not restore the status quo, for the decedent cannot be revived. Thus the heir inevitably exercises dominion over the property. He determines who will receive the property-himself if he does not disclaim, a known other if he does. *See* Hirsch, *The Problem of the Insolvent Heir*, 74 CORNELL L.REV. 587, 607-608 (1989). This power to channel the estate's assets warrants the conclusion that Drye held "property" or a "righ[t] to property" subject to the Government's liens.

*Id.*, at 482. In much the same way, this debtor, who undisputably had a legal or equitable interest in property *as of the commencement of the case*, to wit her testamentary interest under her mother's will, would, by executing a disclaimer post-petition, "inevitably exercise[] dominion over property" – in this case, property of a bankruptcy estate. Only the trustee in bankruptcy is free to exercise such

---

[3] Nor is the Fifth Circuit's decision in *Zibman* to the contrary. *See Matter of Zibman*, 268 F.3d 298 (5th Cir. 2001). There the court ruled only that the scope of one's exemptions (as opposed to the scope of the estate's interest in property), if taken under state law, are measured by that state's laws. In *Zibman*, the debtor had sold his homestead prior to filing, but had not yet re-invested the proceeds of that sale into the purchase of a new homestead. Texas law shelters those proceeds for six months, after which they are no longer exempt under the homestead law. Bankruptcy, said *Zibman*, did not alter or extend that grant. As of filing, the debtor had an exemption with a time limitation. When the time expired, so did the exemption.


dominion and control over estate property, and any attempt to exercise that power in derogation of the trustee's exclusive right is either void *ab initio* or at the least voidable as an impermissible transfer (to wit, the attempt "to channel assets," to borrow from *Drye*). *See In re Farrior*, 344 B.R. 483, 486 (Bankr. W.D.Va. 2006) (federal preemption trumped a debtor's ability to employ state law disclaimer with regard to property designated by statute as property of the estate).

The Bankruptcy Code does permit the operation in bankruptcy of a limited set of state law relation back rules, but disclaimers do not fit within that set. Section 546(b)(1) makes a trustee's avoidance powers under section 549 subject to any generally applicable law that

> (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or
>
> (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

11 U.S.C. § 546(b)(1)(A), (B). Disclaimers are not a device for the "perfection of an interest in property," nor are they a device for the maintenance or continuation of perfection of an interest in property.[4] They are, to the contrary, a mechanism with which to *refuse* or *redirect* an interest in property. Congress certainly *could* have written the relation back language in Section 546(b)(1) more broadly to include shelter for disclaimers – it is presumed to have been aware of the Tenth Circuit's decision in *Hoecker* when it enacted the Bankruptcy Code in 1978. *See Midatlantic National Bank v. New Jersey Dept. of Environmental Protection*, 106 S.Ct. 755, 760 (1986). The fact that it did not lends considerable support to the view that disclaimers executed post-petition

---

[4] Perfection is not a defined term in the Bankruptcy Code. Black's Law Dictionary says that perfection means "validation of a security interest as against other creditors, usually by filing a statement with some public office or by taking possession of the collateral." Black's Law Dictionary, 8th Ed. (Thomson West 1999).

should not be allowed to alter the composition of the estate's interest in property as of the commencement of the case.[5]

Because, as of the filing of the petition, the interest here in question was indisputably property of the bankruptcy estate, the debtor's execution of the disclaimer constituted an impermissible attempt on her part to exercise dominion and control over property of the estate, over which the chapter 7 trustee alone has exclusive dominion and control. If anyone had the authority to execute a disclaimer, it was the chapter 7 trustee. It was certainly not the debtor. *See In re Farrior*, 344 B.R. 483, 486 (Bankr. W.D.Va. 2006).[6]

As earlier noted, the term "transfer" in section 549 is not defined in that section. It is defined in section 101, however, and includes "each mode, direct or indirect, absolute or conditional,

---

[5] Further support for this conclusion comes from section 541(a)(5). That section adds to property of the estate any interest in property that the debtor acquires or becomes entitled to acquire within 180 days after filing by bequest, devise, or inheritance. 11 U.S.C. § 541(a)(5)(A). Here too, had Congress so intended, one would have expected some reference to disclaimers. There is no such reference. Indeed, the Seventh Circuit (the very circuit that issued *Atchison*) ruled at least obliquely that one could not by disclaimer, prevent an intestacy interest from becoming property of the estate. *See Matter of Chenoweth*, 3 F.3d 1111, 1113 (7th Cir. 1993); *see also In re Farrior*, 344 B.R. 483, 486 (Bankr. W.D.Va. 2006) (federal preemption trumped a debtor's ability to employ state law disclaimer with regard to property designated by statute as property of the estate).

[6] Said the court in *Farrior*, "The right to disclaim after the filing of the bankruptcy petition became property of the estate and only the trustee could administer that legal interest of the debtor. To hold otherwise would permit state law to preempt the Federal Bankruptcy Code." *Id.*, at 486.

The court based its conclusion in no small part on its analysis of federal pre-emption. The court's analysis is worth setting forth *verbatim* here:

> [T]he Supreme Court has held that state law is nullified when it conflicts with federal law to the point that it is physically impossible for a citizen to comply with both. Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 143, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). Here, it is not possible for the debtor to transfer his legal right to the inheritance to the trustee to be administered as property of the estate as required under 11 U.S.C. §§ 541 & 542 and also exercise his disclaimer right under Va.Code Ann. § 64.1-196.4. As with the federal grant of exemptions in the Code allowing debtors to exclude certain property from the estate, even state exemption statutes in "opt-out" states arise by the federal grant of exemptions in § 522, the right to disclaim inheritance property and exclude it from the estate must come from an act of Congress. Cf. United States v. Irvine, 511 U.S. 224, 240, 114 S.Ct. 1473, 128 L.Ed.2d 168 (1994) (holding federal tax law is not "struck blind" by state law right to inheritance disclaimer where Congress has shown no intent to support state law legal fictions as touchstones of taxability).

*Id.*, at 486 n. 6.

voluntary or involuntary, of disposing of or parting with – (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)((D). The plain language of the statute applies to what happened in this case – the debtor, post-petition, executed a disclaimer, thus purporting to part with an interest in property, to wit, her testamentary in her mother's probate estate. She did so post-petition, without court authorization, and without the authorization of any provision of the Bankruptcy Code. The disclaimer is thus an unauthorized post-petition transfer, avoidable by the trustee.

Judgment is rendered in favor of the trustee. A separate form of judgment shall be entered by the court.

# # #